United States District Court
Southern District of Texas

**ENTERED**

July 13, 2026

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LEROY HICKS, JR, | § | CIVIL ACTION NUMBER |
| (TDCJ # 02544416) | § | 4:23-cv-02034 |
| Plaintiff, | § | |
| | § | |
| | § | |
| versus | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| ED GONZALEZ, *et al*, | § | |
| Defendants. | § | |

OPINION AND ORDER ON DISMISSAL

The motion for summary judgment by Defendant Ed Gonzalez is granted. Dkt 27.

The motion for summary judgment by Plaintiff Leroy Hicks, Jr, is denied. Dkt 32.

The civil rights action by Plaintiff Leroy Hicks, Jr, is dismissed. Dkt 1.

1. Background

Plaintiff is currently detained in the Texas Department of Criminal Justice–Correctional Institutions Division. He proceeds here *pro se* and *in forma pauperis*.

Plaintiff filed a complaint under 42 USC §1983 in June 2023, when a pretrial detainee in the Harris County Jail. He alleges that Harris County Sheriff Ed Gonzalez and the unnamed "Director of the Harris Health" were violating his constitutional rights by failing to provide him with timely and proper medical care. Dkt 1. Specifically, he alleges that he submitted numerous requests for medical care between November 2020 and May 2023, complaining of back, shoulder, and wrist pain. He alleges that jail staff failed or refused on several occasions to escort him to the triage unit, the medical clinic, or medical appointments, and that

medical staff on several occasions either ignored his requests for care or refused to see him. Id at 4.

Plaintiff attaches as example a grievance report from March 2021, in which he reported that jail staff refused to escort him to a medical appointment for his back pain on March 17, 2021. He alleges that this grievance was determined to be founded. Id at 5, 9.

He also attaches a grievance report from April 2021, in which he reported that medical staff refused to treat his back pain on March 17, 2021. He alleges that this grievance was determined to be unfounded, which he contends conflicts with the earlier founded grievance about not being escorted to medical on the same date. He relies on this alleged conflict as evidence that medical staff were falsifying records to cover up the lack of care. Id at 5, 11.

He also attaches a grievance report from October 2022, when he complained that detention officers confiscated wrist splints that had been prescribed for his carpal tunnel syndrome. Id at 13. He alleges that the splints were taken despite a medical pass for them issued by medical staff. Id at 13, 15.

Plaintiff also provides a list of dates and times when he alleges that he submitted requests for medical care through the jail kiosk system that were acknowledged but then ignored. Id at 17–18. He contends that these records show that both Gonzalez and the Director were deliberately indifferent to his need for timely and proper medical care. Id at 3, 6.

Plaintiff provided upon request a supplemental statement of his claims. Dkt 9. He there alleges that he suffers from shoulder pain, back pain, leg and hip pain, carpal tunnel syndrome, and neuropathy in his feet. Id at 4–5. He admits that medical staff issued a medical pass for certain shoes to help him with the neuropathy. Id at 5, 12. He admits that medical staff prescribed wrist splints for his carpal tunnel syndrome. Id at 4. He also admits that medical staff prescribed naproxen, ibuprofen, and gabapentin at various times to treat his pain. Ibid. But he

asserts that he has never been formally evaluated by a physician to determine the cause of his pain nor ever effectively been treated for it. Id at 4–5, 9, 16.

Plaintiff describes Gonzalez as "the ultimate authority in the jail system" and alleges that detention officers under his supervision intentionally denied or delayed access to medical treatment by failing to escort Plaintiff to obtain medical care. Id at 2. He alleges that Gonzalez violated his civil rights by failing to have enough staff on duty to escort him to the medical clinic as needed. Id at 1. He also alleges that the same officers, again under Gonzalez's supervision, interfered with treatments ordered by medical staff. Id at 2. He further alleges that before Harris Health took over medical services in 2022, Gonzalez oversaw the medical staff, who regularly ignored his pleas for care and treatment. Id at 1–2.

As relief, he seeks an award of compensatory and punitive damages, from Gonzalez and the Director. Dkt 1 at 4.

Service of process was ordered on Gonzalez in February 2025. Dkt 14. Gonzalez answered the complaint and filed a motion for summary judgment. Dkts 20 & 27. Gonzalez contends that Plaintiff's action is barred by the statute of limitations and by his failure to exhaust his administrative remedies. Dkt 27 at 14–16, 20–23. He also contends that qualified immunity pertains. Id at 16–20. He filed as evidence the Harris County Jail Inmate Handbook, Plaintiff's grievance records, and a portion of Plaintiff's medical records. Dkts 27-1 through 27-9.

Plaintiff filed a pleading that he titled a motion for summary judgment, but which is more in the nature of a response. Dkt 32. He contends that his action isn't barred by limitations because Gonzalez's deliberate indifference continued within two years of the filing of the complaint. Id at 2. He also contends that he should be deemed to have sufficiently exhausted his administrative remedies because jail officials acted to thwart full exhaustion. Id at 4–6. And he contends that Gonzalez isn't entitled to qualified immunity because jail officials under his

leadership intentionally deprived Plaintiff of his rights. Id at 4. He also alleges for the first time that Gonzalez had a custom or policy of tolerating the unconstitutional actions of his subordinates. Id at 3, 7. He also alleges for the first time, and without specific facts, that Gonzalez was negligent in supervising his subordinates and was deliberately indifferent by failing to act on Plaintiff's grievances. Id at 2, 7.

Gonzalez responded further, stating that Plaintiff's unsworn and conclusory allegations are legally insufficient to entitle him to relief. Dkt 33.

Service of process wasn't ordered on the Director of Harris Health, and Plaintiff's claims against the Director have been disposed of by separate order. Dkt 35.

### 2. Legal standard

Plaintiff's complaint is construed liberally because he proceeds *pro se. Coleman v United States*, 912 F3d 824, 828 (5th Cir 2019), citing *Erickson v Pardus*, 551 US 89, 94 (2007, *per curiam*).

To state a valid claim under §1983, a plaintiff must (i) allege a violation of rights secured by the Constitution or laws of the United States, and (ii) demonstrate that the alleged violation was committed by a person acting under color of state law. *West v Atkins,* 487 US 42, 48 (1988); *Gomez v Galman*, 18 F4th 769, 775 (5th Cir 2021, *per curiam*). The first element recognizes that "state tort claims are not actionable under federal law; a plaintiff under [§]1983 must show deprivation of a federal right." *Nesmith v Taylor,* 715 F2d 194, 195 (5th Cir 1983, *per curiam*). The second element means that generally only *state* actors—not private parties—can be liable for violations of civil rights. *Frazier v Board of Trustees of Northwest Mississippi Regional Medical Center*, 765 F2d 1278, 1283 (5th Cir 1985).

Rule 56(a) of the Federal Rules of Civil Procedure requires a court to enter summary judgment when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to

4

judgment as a matter of law." A fact is *material* if it "might affect the outcome of the suit under the governing law." *Sulzer Carbomedics, Inc v Oregon Cardio-Devices Inc*, 257 F3d 449, 456 (5th Cir 2001), quoting *Anderson v Liberty Lobby Inc*, 477 US 242, 248 (1986). A dispute is *genuine* if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v CCC & R Tres Arboles LLC*, 736 F3d 396, 400 (5th Cir 2013), quoting *Anderson*, 477 US at 248.

The summary judgment stage doesn't involve weighing the evidence or determining the truth of the matter. *Anderson*, 477 US at 249. Disputed factual issues must be construed in favor of the nonmoving party. *Little v Liquid Air Corporation*, 37 F3d 1069, 1075 (5th Cir 1994, *en banc*). All reasonable inferences must also be drawn in the light most favorable to the nonmoving party. *Carter v Dupuy,* 173 F4th 561, 565 (5th Cir 2026), citing *Griggs v Brewer,* 841 F3d 308, 312 (5th Cir 2016). But conclusory and unsupported statements aren't evidence, and in the absence of any evidence, it won't be assumed "that the nonmoving party could or would prove the necessary facts." *Little*, 37 F3d at 1075, citing *Lujan v National Wildlife Federation*, 497 US 871, 888 (1990).

The moving party typically bears the entire burden to demonstrate the absence of a genuine issue of material fact. *Nola Spice Designs LLC v Haydel Enterprises Inc*, 783 F3d 527, 536 (5th Cir 2015); see also *Celotex Corp v Catrett*, 477 US 317, 322–23 (1986). But when a motion for summary judgment by a defendant presents a question on which the plaintiff bears the burden of proof at trial, the burden shifts to the plaintiff to proffer summary judgment evidence establishing an issue of material fact warranting trial. *Nola Spice*, 783 F3d at 536. To meet this burden, the evidence must be both "competent and admissible at trial." *Bellard v Gautreaux*, 675 F3d 454, 460 (5th Cir 2012).

3. Discussion

Gonzalez raises three bases for entry of summary judgment in his favor, which are considered in turn.

a. Statute of limitations

Gonzalez first contends that he's entitled to entry of summary judgment in his favor because Plaintiff filed his action too late. The evidence shows this argument is only partially correct.

Section 1983 doesn't contain an explicit limitations period, so federal courts borrow the forum state's general personal injury limitations period. See *Bargher v White*, 928 F3d 439, 444 (5th Cir 2019), citing *Wallace v Kato*, 549 US 384, 387 (2007). "Texas has a two-year statute of limitations for personal injury claims[,]" so a civil rights plaintiff in Texas has two years from the date his claims arose to file suit. *Balle v Nueces County, Texas*, 952 F3d 552, 556 (5th Cir 2017), citing *Piotrowski v City of Houston*, 237 F3d 567, 576 (5th Cir 2001) (*Piotrowski II*); see also Texas Civil Practice & Remedies Code §16.003(a).

While "state law supplies the applicable limitations period and tolling provisions," federal law governs when the cause of action arises. *Harris v Hegmann,* 198 F3d 153, 156–57 (5th Cir 1999, *per curiam*). Generally, a claim *arises* when "the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Matter of Hoffman*, 955 F3d 440, 444 (5th Cir 2020, *per curiam*), quoting *Piotrowski v City of Houston*, 51 F3d 512, 516 (5th Cir 1995) (*Piotrowski I*). The plaintiff only needs to know the facts that would ultimately support a claim—not that he has a legal cause of action. See *Piotrowski II*, 237 F3d at 576.

As a result, a civil rights action brought by an injured Texas plaintiff more than two years after he knew or had reason to know of his injury is barred by limitations and subject to dismissal unless he can show grounds for equitable tolling of the limitations period. See *Gonzales v Wyatt*, 157 F3d 1016, 1019–20 (5th Cir 1998); *Rotella v Pederson,* 144 F3d 892, 897 (5th Cir 1998) (noting that

6

Texas equitable-tolling principles apply to §1983 cases filed by plaintiffs injured in Texas).

Gonzalez contends that Plaintiff's injury arose in January 2021, when he filed his first grievance about an alleged denial of medical care. Because this action wasn't filed until June 2023—more than two years after Plaintiff filed his first grievance—Gonzalez contends that the entire action is barred by limitations. Dkt 27 at 14–16. Plaintiff responds that while he was first aware of the injury at that time, the violations and his ensuing injuries continued with no relief until he filed this complaint. Dkt 32 at 2.

Plaintiff's response raises the question of whether the limitations period was tolled under the *continuing-tort doctrine*. A *continuing tort* under Texas law is one that "involves wrongful conduct inflicted over a period of time that is repeated until desisted." *Exxon Mobil Corporation v Rincones*, 520 SW3d 572, 592 (Tex 2017), quoting *First General Realty Corp v Maryland Casualty Company*, 981 SW2d 495, 501 (Tex App—Austin 1998, pet denied). It generally arises when the plaintiff alleges facts demonstrating "continuous wrongful conduct on an almost daily basis." *Brown v Cain*, 546 F Appx 471, 474 (5th Cir 2013, *per curiam*). When the facts show a continuing tort, the cause of action doesn't arise for limitations purposes until the defendant's wrongful conduct ends. *Rincones*, 520 SW3d at 592; see also *Lavellee v Listi*, 611 F2d 1129, 1132 (5th Cir 1980).

Plaintiff's allegations don't support his claim for equitable tolling. He admittedly received medical attention on various dates between January 2021 and May 2023, so he doesn't show the continuous denial of medical care necessary to support tolling under the continuing-tort doctrine. The continuing-tort doctrine thus doesn't save his claims that arose before June 2, 2021. See *Nottingham v Richardson*, 499 F Appx 368, 375 (5th Cir 2012).

But without the continuing-tort doctrine, "each instance of potentially deliberate indifference" arising from allegedly inadequate medical care starts with the request for medical care and ends when the inmate receives

medical attention. Ibid. Each instance of deliberate indifference thus constitutes a discrete act for limitations purposes. Plaintiff's action is timely as to any alleged acts of deliberate indifference that arose after June 2, 2021.

The motion for summary judgment by Gonzalez on the defense of limitations will thus be granted to the extent that it seeks dismissal of Plaintiff's claims arising from alleged incidents that occurred before June 2, 2021. But it will be denied to the extent that it seeks dismissal of the entire action as barred by limitations.

### b. Exhaustion

Gonzalez next contends that Plaintiff's action is barred by his failure to exhaust administrative remedies.

The Prison Litigation Reform Act bars an inmate's §1983 action concerning prison conditions until "such administrative remedies as are available are exhausted." 42 USC §1997e(a). The phrase *prison conditions* has been interpreted to include all types of constitutional claims. See *Porter v Nussle,* 534 US 516, 532 (2002): "[W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." See also *Valentine v Collier,* 956 F3d 797, 804 (5th Cir 2020, *per curiam*) (exhaustion requirement applied in deliberate indifference case). Exhaustion is mandatory, regardless of the forms of relief sought or available through administrative avenues. See *Porter,* 534 US at 524.

Courts also require "proper exhaustion of administrative remedies." *Woodford v Ngo,* 548 US 81, 84 (2006). An inmate doesn't *properly exhaust* the grievance process "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Id at 83–84. Nor does he do so unless administrative remedies are pursued to their conclusion. *Wright v Hollingsworth,* 260 F3d 357, 358 (5th Cir 2001).

Unlike some circuits, the Fifth Circuit takes "a strict approach" to the exhaustion requirement. *Johnson v Ford,*

8

261 F Appx 752, 755 (5th Cir 2008, *per curiam*). If an inmate doesn't properly exhaust the available administrative remedies, "a court may not excuse a failure to exhaust" regardless of the circumstances. *Ross v Blake*, 578 US 632, 639 (2016). Instead, claims filed before an inmate has properly exhausted his administrative remedies must be dismissed. See *Gonzalez v Seal,* 702 F3d 785, 788 (5th Cir 2012, *per curiam*): "District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint."

The Harris County Jail has a three-step administrative remedies procedure outlined in its Inmate Handbook. Dkt 27-1 at 6–7. Inmates must first try to resolve the issue informally with "the Detention Officer, Deputy, or Staff Member on duty." If that doesn't resolve the issue, the inmate should ask to speak with the Floor Supervisor. If the issue still isn't resolved, the inmate may file a formal grievance. Id at 7. A formal grievance may be submitted on either a grievance form or any piece of paper. Inmates will receive an interim response within fifteen days of receipt. After the investigation is complete, the inmate will be provided with a copy of the final decision. If a grievance is determined to be either *unfounded* or *founded/resolved*, the inmate may appeal to the Grievance Board within five working days of the investigator's decision. All *founded/unresolved* grievances will be automatically appealed to the Grievance Board. Ibid.

Gonzalez provided a copy of Plaintiff's grievance history, which shows that Plaintiff didn't pursue the grievance process to conclusion for any of the grievances he filed between June 2, 2021, and the filing of this complaint. Dkt 27-7. Plaintiff thus didn't exhaust his administrative remedies as to any of his live claims before filing this action. This requires dismissal of the action, for the Fifth Circuit clearly holds, "Pre-filing exhaustion is mandatory,

9

and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez*, 702 F3d at 788.

Plaintiff admits that he didn't exhaust his available grievance remedies as to all of his claims. Dkt 9 at 23–24. But he responds that exhaustion should be excused because jail officials sometimes failed to timely notify him of decisions. He also contends that he didn't need to file an appeal when he obtained relief by filing the initial grievance. Dkt 32 at 4–6.

Exhaustion isn't required when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 US at 644. Courts take the position that those circumstances render the administrative process unavailable. Ibid.

But exhaustion will be excused only upon evidence that prison officials actually thwarted the process. Plaintiff offers no such evidence. He doesn't allege that jail officials dismissed his appeals as untimely after he was belatedly notified of an adverse decision. He instead admits that he simply never filed an appeal. Exhaustion was thus thwarted by his own failure to act rather than by the actions of jail officials. See *Washington v Texas Department of Criminal Justice*, 2006 WL 3245741, *5 (SD Tex) (rejecting argument that, because grievance appeal would have been untimely had it been made, failure to file it should be excused).

Plaintiff points to no evidence sufficient to raise a genuine dispute of material fact as to his lack of exhaustion. The motion for summary judgment by Gonzalez on the basis of a failure to exhaust administrative remedies is granted.

### c.    Qualified immunity

Dismissal for lack of exhaustion alone would dispose of Plaintiff's action only without prejudice. Consideration of qualified immunity is thus necessary to determine whether dismissal with prejudice is instead appropriate.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v Callahan*, 555 US 223, 231 (2009), quoting *Harlow v Fitzgerald*, 457 US 800, 818 (1982). Analysis of the defense involves two inquiries. See *Aguirre v City of San Antonio*, 995 F3d 395, 406 (5th Cir 2021). A court "first asks whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right." Ibid, quoting *Tolan v Cotton*, 572 US 650, 655–56 (2014, *per curiam*). Second, it "asks whether the right in question was 'clearly established' at the time of the violation." *Tolan*, 572 US at 656, citing *Hope v Pelzer*, 536 US 730, 739 (2002). "'The salient question is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged conduct was unconstitutional.'" Ibid, quoting *Hope*, 536 US at 741 (cleaned up). Immunity bars the claim if the plaintiff fails to satisfy either step. See *Spikes v Wheat*, 141 F4th 662, 668 (5th Cir 2025, *per curiam*).

Plaintiff alleges that Gonzalez is liable for the acts of his subordinates because he "is the ultimate authority to the jail system." Dkt 9 at 2. He also alleges that Gonzalez failed to ensure that there were enough staff to escort him to medical appointments as needed, failed to ensure that medical staff responded to his requests for care, and failed to prevent his officers from interfering with medical treatment that was ordered. Id at 1–2.

Under §1983, supervisory officials aren't responsible for the actions of their subordinates on a theory of either vicarious liability or *respondeat superior*. *Hicks v LeBlanc*, 81 F4th 497, 504 (5th Cir 2023), quoting *Thompkins v Belt*, 828 F2d 298, 303 (5th Cir 1987). Plaintiff thus can't hold Gonzalez liable based solely on actions taken or not taken by his subordinates.

But supervisors can be held liable under §1983 for their own actions. See *Alton v Texas A&M University*, 168 F3d

196, 200 (5th Cir 1999). To state a claim against a supervisory official under §1983, a plaintiff must allege facts showing either (i) the supervisor's personal involvement in a constitutional deprivation and a causal connection between the supervisor's wrongful conduct and the deprivation, or (ii) the supervisor's decision to implement an unconstitutional official policy that resulted in a constitutional injury. See *Thompkins,* 828 F2d at 304; see also *Gates v. Texas Department of Protective and Regulatory Services*, 537 F3d 404, 435 (5th Cir 2008).

An *official policy* includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v Thompson*, 563 US 51, 61 (2011). Liability attaches when "supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins,* 828 F2d at 304, quoting *Grandstaff v City of Borger*, 767 F2d 161, 169, 170 (5th Cir 1985) (cleaned up).

This standard requires more than conclusory assertions. As framed by the Fifth Circuit, "a complaint's description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Peña v City of Rio Grande City*, 879 F3d 613, 622 (5th Cir 2018), quoting *Spiller v City of Texas City, Police Department,* 130 F3d 162, 167 (5th Cir 1997).

In addition, the plaintiff must allege facts showing that the supervisory official implemented the official policy with deliberate indifference to the likelihood of constitutional violations by subordinates complying with the policy. See *Porter v Epps*, 659 F3d 440, 446 (5th Cir 2011). *Deliberate indifference* is "a stringent standard of fault," one "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id at 446–47, quoting *Connick*, 563 US at 61. The allegations necessary to show a supervisor's deliberate indifference to a likelihood of further constitutional violations generally

must include at least a pattern of similar violations. *Rios v City of Del Rio, Texas,* 444 F3d 417, 427 (5th Cir 2006), quoting *Johnson v Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F3d 293, 309 (5th Cir 2004).

Plaintiff doesn't allege facts showing that Gonzalez had any personal involvement with any of the events described in his complaint. Indeed, he doesn't allege facts showing that Gonzalez was even aware of the alleged problems with his treatment or medications. Plaintiff points to the grievances he filed, but those grievances don't show that Gonzalez personally knew of the alleged violations of Plaintiff's rights. See *Blackmon v Kukua*, 758 F Supp 2d 398, 411 (SD Tex 2010), citing *Kidd v Livingston*, 2010 WL 2208247, *3 (ED Tex) (filing grievances with prison unit wasn't sufficient to put executive director on notice of alleged violations); see also *Reagan v Burns*, 2019 WL 6733023, *8 (ND Tex): "A failure to respond to a letter or grievance does not rise to the required level of personal involvement for liability."

Plaintiff also doesn't allege facts showing that Gonzalez implemented an unconstitutional policy that was the moving force behind the alleged violations of Plaintiff's rights. He identifies no specific policy that caused the alleged violations. He includes no allegations of prior similar incidents that might show a custom or practice adopted or endorsed by Gonzalez. And he alleges no facts showing that Gonzalez knew of any similar violations and responded to them with deliberate indifference to the likelihood of further violations. *Reagan*, 2019 WL 6733023 at *8 (courts will impute to supervisory officials the knowledge necessary to find deliberate indifference only when "there is evidence of a history of widespread abuse"). He thus fails to state a claim of supervisory liability upon which relief can be granted.

Gonzalez admittedly relies on facts different from those discussed above to support his claim of qualified immunity, taking issue with the accuracy of Plaintiff's allegations rather than their adequacy. But a district court may "grant summary judgment on the basis of facts shown by

competent evidence in the record, even if those facts are not highlighted in the motion for summary judgment." *United States v Houston Pipeline Co*, 37 F3d 224, 227 (5th Cir 1994). Summary judgment may thus be granted on any ground supported by the record, even if that ground isn't specifically raised by the movant. Ibid.

Plaintiff's response alleges for the first time that Gonzalez had a custom or policy of tolerating the unconstitutional actions of his subordinates, that he was negligent in supervising his subordinates, and that he was deliberately indifferent by failing to act on Plaintiff's grievances. Dkt 32 at 2–3, 7. This is properly rejected, if only because the Fifth Circuit holds, "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Bye v MGM Resorts International Inc*, 49 F4th 918, 925 (5th Cir 2022), quoting *Jackson v Gautreaux*, 3 F4th 182, 188 (5th Cir 2021). But even if these new allegations could be considered, Plaintiff offers no evidence to support them. His unsupported and conclusory allegations of wrongdoing are insufficient to raise the genuine issues of material fact necessary to avoid entry of summary judgment in favor of Gonzalez.

The record doesn't establish a basis for a claim of supervisory liability against Gonzalez. Absent such a basis, Plaintiff fails to overcome the first element of the qualified immunity defense. Analysis of the second element is thus unnecessary.

Gonzalez is entitled to summary judgment on the defense of qualified immunity. His motion for summary judgment on that basis will be granted, and the claims asserted by Plaintiff against him will be dismissed with prejudice.

4.    Conclusion

The motion for summary judgment by Defendant Ed Gonzalez is GRANTED. Dkt 27.

The putative motion for summary judgment by Plaintiff Leroy Hicks, Jr, is DENIED. Dkt 32.

14

The claims by Plaintiff Leroy Hicks, Jr, against Defendant Ed Gonzalez are DISMISSED WITH PREJUDICE. Dkt 1.

Any other pending motions are DENIED AS MOOT.

Final judgment will enter separately.

SO ORDERED.

Signed on  July 13, 2026    , at Houston, Texas.


Honorable Charles Eskridge
United States District Judge